**IN RE Eric Dean PERKINS, Relator**

**NO. WR-85,009-01**

Court of Criminal Appeals of Texas.

Filed: October 12, 2016

Rehearing Denied December 7, 2016

Michael Mowla, Cedar Hill, TX, for Appellant.

Laura Garza Jimenez, Nueces County Attorney, Corpus Christi, TX, Lisa C. McMinn, State's Attorney, Austin, for the State.

## CONCURRING OPINION

JOHNSON, J., joined by RICHARDSON and NEWELL, JJ., filed a concurring opinion.

In this case, relator applied to us for relief through a writ of mandamus. I concur in the disposition of his application for relief.

This Court's standard for granting mandamus relief requires that a relator have no adequate remedy at law and that the requested action by respondent is ministerial. *In re McCann*, 422 S.W.3d 701, 704 (Tex. Crim. App. 2013). The Texas Supreme Court has a three-part standard: a legal duty to perform a nondiscretionary act; a demand for performance; and a refusal to act. *Stoner v. Massey*, 586 S.W.2d 843, 846 (Tex. 1979). Relator has not shown that he has fulfilled the requirements of either standard.

Two thoughts occur to me: one must use the right tools for the job, and if one wishes relief one must ask for the tools by which to obtain it. In this sort of case, the first required tool is written findings by the trial court. Pursuant to Texas Code of Criminal Procedure art. 26.05(c),

> [n]o payment shall be made under this article until the form for itemizing the services performed is submitted to the judge presiding over the proceedings . . . and until the judge . . . approves the payment. If the judge . . . disapproves the requested amount of payment, the judge . . . shall make written findings stating the amount of payment that the judge . . . approves and each reason for approving an amount different from the requested amount.

If the judge does not approve the requested amount or fails to act on the request by the 60th day, the attorney

> may appeal the disapproval or failure to act by filing a motion with the presiding judge of the administrative judicial region. On the filing of a motion, the presiding judge of the administrative judicial regional shall review the disapproval of payment or failure to act and determine the appropriate amount of payment.

By the plain language of Art. 26.05(c), the determination of an appropriate pay-

ment is at the discretion of the judge. But written findings by the judge *shall* be made in regard to that determination if the requested amount is not fully paid and therefore are ministerial. The written findings must be made.

If they are not made, the attorney lacks the right tool for addressing the diminished payment and therefore must seek to obtain that tool by filing a written request that the required written findings be made. If, after such a request, the written findings still are not made, the judge is subject to a writ of mandamus that orders that written findings be made. Logically, such a writ should be issued by the presiding judge of the administrative judicial region, or by higher authority if the presiding judge fails to act. Once the written findings are made, the usual appeal rules apply.

I note that, while a writ of mandamus may be issued to force creation of written findings, it cannot dictate what those findings will state; the content of findings is left to the discretion of the judge.

ALCALA, J., filed a dissenting opinion in which MEYERS, J., joined.

Instead of "Buyer Beware," this case should come with a sign stating, "Capital Counsel Caution," or "Lawyers Look Out: Judge May Not Pay for Your Work." In this case, this trial judge has refused to pay amounts owed to relator Eric Dean Perkins, who was appointed as defense counsel to represent an indigent defendant in a capital-murder case in which the State was seeking the death penalty. Although he performed his duty so successfully that the jury declined to assess the death penalty against his client, the trial-court judge refused to pay relator for a portion of his time that he had expended in defense of his client. The respondent trial-court judge declined payment for reasons not permit-

ted under the law based on an impermissible rationale. Because respondent has denied the fee requested by relator in a manner that is outside the bounds of the law, I respectfully dissent.

## I. Background

In March 2014, the respondent trial-court judge appointed relator as second-chair counsel for Brendan Gaytan, who was accused of a capital murder for which the State was seeking a death sentence. Relator was appointed under a scheme set forth by the Fifth Administrative Judicial Region that provides that a second-chair counsel "shall be compensated at the rate of $150 per hour for in-court and out-of-court work." Relator turned in detailed invoices that specified how he spent his time preparing for the case. In the period of time between his appointment and the time of Gaytan's jury trial, relator submitted three interim invoices for which the respondent authorized payment in full in the amounts of $8,860, $10,155, and $11,002. But after the trial had occurred, the trial judge refused to pay relator for his requested final invoice amount of $48,120, and he challenged that decision. After that, the respondent agreed to pay relator approximately $27,000, which was payment for his time in court during the eighteen-day jury trial for which he was to be paid for ten hours of work per day at the rate of $150 per hour. But even with that payment, relator was left shorted $21,120 as payment that he was due for his work on the case. Respondent did not make the required findings of fact to explain why she shorted relator more than twenty-thousand dollars. In May 2015, relator filed verified motions for payment of attorney's fees directed at the then-presiding judge of the Fifth Administrative Judicial Region. In June 2015, the presiding

judge upheld respondent's decision to deny payment of the $21,120 amount.

Relator filed a petition for a writ of mandamus in the court of appeals challenging the declination of payment for the services that he had rendered. Respondent filed a response to relator's petition, in which she explained her reasons for shorting the relator. She indicated that she had paid three invoices prior to trial and that in the last of those invoices relator had represented that the bulk of his trial preparation was complete and that that would probably be the last of his interim bills. Respondent said that the number of hours relator detailed on his final invoice was not reasonable due to the "validity of the actual work conducted by Relator or the need for the excess hours of work based on Relator's past assurances of preparedness for trial." Respondent explained that the trial lasted eighteen days, twelve of which were for jury selection, and that she had paid relator for ten hours of work for each of those days. Respondent also said that she had paid $18,000 for an investigator for that case and that that should have reduced the number of hours of work needed by relator. Respondent further justified the reduced amount by explaining that relator was paid a total of $57,017, as compared to the first-chair counsel in that same case who had been paid a total of $27,949, and as compared to the combined total of $38,005 that had been paid to the first and second chairs who had represented the co-defendant in a case that was dismissed prior to jury selection.

The court of appeals held that relator had an adequate right of appeal to the administrative judge. It further explained that, in the absence of findings of fact by the trial court, it could not ascertain that the trial court acted unreasonably in its refusal to pay the requested amount.

## II. Analysis

Relator argues that he is entitled to mandamus relief because respondent failed to pay him the full amount of his attorney's fees for work he performed in his representation of a person accused of capital murder and facing the death penalty. Relator argues that the court of appeals's analysis in this case was erroneous, and he is right. The court of appeals held that relator had a right of appeal to the administrative judge, but that court's analysis failed to acknowledge that relator did attempt to appeal to the administrative judge. Twice. Faulting relator for not seeking relief from the administrative judge so that he could be denied a third time abrogates our responsibility as an appellate court. The court of appeals should not have rejected this relator's petition for mandamus relief on that procedural basis because relator has shown that he exhausted his administrative remedy by appealing to the Presiding Judge of the Fifth Administrative Region, to no avail.

The court of appeals held that the absence of findings of fact and conclusions of law from the trial court required it to decline to grant relator's petition for mandamus relief, presumably because, in the absence of those findings, it could not ascertain the trial-court judge's rationale for her determination. But this analysis places form over substance. Although she did not make fact findings, respondent filed a response to relator's petition for mandamus relief in the court of appeals and, in that response, she articulated the basis for her decision to refuse payment to relator. Furthermore, to the extent that there are no findings in this case, that fact should be held against the respondent rather than against the relator because the statute mandates findings when a judge refuses to pay the requested fees. The statute states, "If the judge or director disapproves the

requested amount of payment, the judge or director shall make written findings stating the amount of payment that the judge or director approves and each reason for approving an amount different from the requested amount." TEX. CODE CRIM. PROC. art. 26.05(c). In any case, this is not a situation in which we do not know the trial court's rationale for its ruling. Regardless of whether the trial court's rationale was reflected in findings of fact or in a response to the petition for mandamus, we have received the trial court's reasons for its decision. To decline to reach the merits of this matter due to a lack of fact findings, which here would have been redundant of the substance in the respondent's response, as the court of appeals did in this case, is not a proper basis for the rejection of relator's petition for mandamus.

On the merits, the applicable statute mandates that an attorney be paid a reasonable fee, which here had been set at an amount of $150 by the administrative region, for reasonable and necessary time spent out of court on the case. Article 26.05 states,

(a) A counsel, other than an attorney with a public defender's office or an attorney employed by the office of capital and forensic writs, appointed to represent a defendant in a criminal proceeding, including a habeas corpus hearing, shall be paid a reasonable attorney's fee for performing the following services, based on the time and labor required, the complexity of the case, and the experience and ability of the appointed counsel:

(1) time spent in court . . . ; [and]

(2) reasonable and necessary time spent out of court on the case, supported by any documentation that the court requires . . . .

TEX. CODE CRIM. PROC. art. 26.05(a). The standards and rules of the Fifth Administrative Judicial Region provide that in a death-penalty case, "Second Chair counsel shall be compensated at the rate of $150.00 per hour for in-court and out-of-court work."

Although she could have declined to pay relator if she determined that his requested amount did not represent "reasonable and necessary time spent out of court on the case," the respondent's stated reasons for declining the requested amount were not on that basis. See id. Rather, respondent declined to pay relator's requested fees because (1) relator had represented in his third pretrial invoice that the bulk of his preparation was completed, (2) the amount requested by relator was more than the bill the first chair had submitted in that same case, and respondent had paid $18,000 for an investigator for that same case, and (3) the amount requested was more than other counsel had submitted in representing the co-defendant. As explained more fully below, those were not permissible bases for declining to pay relator.

First, under the statute's terms, respondent could refuse to pay relator for the time he had spent preparing for trial after his third invoice, but only if she decided that relator's expenditure of the time was unreasonable and unnecessary. See id. Although at the time that he filed his third invoice he believed that the bulk of his work on the case had been completed, relator later explained that various matters arose that required his work after that point. He explained that previously unknown people came forward claiming to be witnesses and that a cellular phone tower analysis required him to do additional work. The fact that counsel had to perform more work after he had indicated to the trial court that he expected his work to

have been completed is alone not a proper basis to reject payment for that work. The explanation from respondent that came closest to meeting the statutory requirements that would allow her to refuse to pay relator for the work he performed was her statement that the "actual work conducted by Relator" lacked "validity" because he had earlier represented to her that he was prepared for trial. But respondent may not decline payment on her mere belief that relator should have been ready and should not have conducted any further work on the case as the actual trial approached. Respondent treats trial preparedness as if it were a static condition that may never change depending on future events, which here included new evidence requiring additional investigation. Relator has explained that he learned of events that required his attention, and respondent has not disagreed with the existence of those events. Thus, respondent never determined that the additional work done by relator was unreasonable or unnecessary; rather, she only concluded that he conducted more work after he had represented to her that his work was likely completed, but that assessment cannot be equated with the additional work being unreasonable or unnecessary. Respondent's explanation for refusing to pay is improper in its failure to consider relator's detailed time sheets explaining the nature of his work and in its failure to explain why that particular work was unreasonable or unnecessary. In her response to the petition for mandamus, respondent does not purport to suggest that counsel should not have prepared for trial by interviewing witnesses who had come forward or that it was unnecessary to prepare the cell-tower evidence. Rather, respondent merely disagrees with the amount of time it took counsel to prepare for the death-penalty trial, even though that preparation was necessary to ensure the quality of the representation in this case.

Second, to suggest that counsel's fee request is unreasonable by comparing it to the first-chair in this case is not a permissible reason to reject the fee. The question permitted under the statutory language is whether the work was performed and whether the work was "reasonable and necessary time spent out of court on the case." *See id.* And the same is true regardless of whether the trial court paid for an investigator in the same case. If the work performed by relator was reasonable and necessary, it is immaterial that first-chair counsel was paid less or that an investigator was also paid in the case.

Third, under the statutory language that focuses on whether an attorney's bill for out-of-court time was for reasonable and necessary acts, it was improper for respondent to compare this defendant's case to his co-defendant's case. Co-defendants in a capital-murder case may have similar guilt or innocence issues, but the punishment phase is almost always going to be different. One defendant may require significant investigation into mental or physical illnesses, intellectual disability, criminal history, school records, family, and any number of other things, whereas another defendant's situation may be far more straightforward. Here, for example, the co-defendant's case did not go to trial because it was dismissed prior to jury selection. To reject the fee based on a comparison of expenses to those in another case that may be entirely different is not a valid reason under the statute. *See id.* Given that the trial-court judge hired relator to represent the defendant and agreed to pay him at a rate of $150 per hour for his work, and given that there is no evidence that relator did not perform the work or that the work performed was unreasonable or unneces-

sary, mandamus relief is appropriate in this case.

This case is important because the refusal to pay competent counsel in death-penalty cases will result in only incompetent counsel agreeing to take on these exceedingly complex cases. The statute authorizing funding for defense counsel in capital cases gave the trial courts narrow discretion to refuse payment only for unnecessary or unreasonable work, which is not the basis articulated by the respondent in this case. As the Amicus Curiae brief that was filed by the Texas Defender Service observes, "If courts do not adequately pay defense counsel for the time spent defending death penalty cases, competent counsel will not accept appointment in those cases," and "Texas will return to those days when sleeping lawyers brought worldwide condemnation of its capital justice system."

In his motion for leave to file a petition for a writ of mandamus in this case, relator notes that, in one study relating to the amount of time expended in the defense of a capital-murder accusation, the median time spent by a first-chair capital attorney in a case that went to trial was 1,347 hours, and the median time spent by a second-chair capital attorney was 951 hours. Under that standard, respondent should have expected that relator would submit a request in the approximate amount of $142,650, which would mean that his requested total amount of $78,137, a little over half of that amount, was a real bargain. Relator also notes that in federal death-penalty cases, the average attorney billed 1,464 hours. Using that yardstick at a rate of $150 an hour would mean that respondent should have expected to pay around $219,600. Again, respondent got quite a bargain, and yet she refused to pay. If prosecutors seek the death penalty in a case, then the State should be prepared to pay the defense lawyers who must expend a required amount of time to investigate the case and defend their client, particularly when the record, as here, clearly shows that the defense attorneys were extremely successful in obtaining a jury verdict that spared the life of the defendant.

### III. Conclusion

In light of the foregoing considerations, I would grant the petition for mandamus relief and order respondent to pay relator the remaining sums that are due to him as payment for the work he expended in the successful representation of a capital-murder defendant. For these reasons, I respectfully dissent.